UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| SHERYLRICA Q., | § § | |
| Plaintiff, | § § | |
| v. | § § | Case # 1:21-cv-387-DB |
| COMMISSIONER OF SOCIAL SECURITY, | § § § | MEMORANDUM DECISION AND ORDER |
| Defendant. | § | |

<u>**INTRODUCTION**</u>

Plaintiff Sherylrica Q. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 8. Plaintiff also filed a reply brief. *See* ECF No. 9. For the reasons set forth below, Plaintiff's motion (ECF No. 7) is **GRANTED**, the Commissioner's motion (ECF No. 8) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

<u>**BACKGROUND**</u>

Plaintiff protectively filed an application for SSI on November 4, 2019, alleging disability beginning September 18, 2018 (the disability onset date), due to anxiety, obsessive compulsive disorder, and high blood pressure. Transcript ("Tr.") 15, 158-64, 197. Plaintiff's claim was denied initially on May 14, 2019, and upon reconsideration on July 24, 2019., after which Plaintiff timely

requested an administrative hearing. Tr. 15. On August 6, 2020, Administrative Law Judge Mary Mattimore (the "ALJ") conducted a telephonic hearing.[1] Tr. 15. Plaintiff appeared and testified at the hearing and was represented by Kenneth R. Hiller, an attorney. *Id*. Elizabeth Laflamme, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on September 25, 2020, finding that Plaintiff was not disabled. Tr. 12-30. On February 9, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's September 25, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 15.

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her September 25, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since December 26, 2018, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: panic disorder, generalized anxiety disorder, depressive disorder, and obsessive compulsive disorder ("OCD") (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant can perform a low-stress job, which is defined as simple routine work with one-to-two steps and make simple workplace decisions but not at a production rate (assembly line) pace. The claimant can tolerate minimal changes in workplace processes and settings. She can have occasional interaction with supervisors, coworkers, and the public. The claimant cannot operate hazardous machines or work at unprotected heights. The claimant will be off task for up to three percent of the day due to symptom exacerbation.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on May 27, 1982 and was 36 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 26, 2018, the date the application was filed (20 CFR 416.920(g)).

Tr. 15-25.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on December 26, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 25.

## **ANALYSIS**

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ provided no explanation for her 3% off-task restriction, and relatedly, argues that because the ALJ found "partially persuasive" an opinion from treating psychiatrist Joshua Morra, M.D. ("Dr. Morra"), she should have adopted his assessment that Plaintiff had marked limitations that "could implicate off-task time." *See* ECF No. 7-1 at 8-12. Specifically, Plaintiff argues that Dr. Morra's opinion that Plaintiff was very limited in attention and concentration and working at a consistent pace implicated the vocational expert's testimony that an employer would tolerate only up to 10% off-task time. *See id*. at 11.

The Commissioner argues in response that the ALJ's evaluation of Plaintiff's mental impairments and the corresponding RFC limitations was supported by substantial evidence. *See* ECF No. 8-1 at 6-20. The Commissioner further argues that while the record contained evidence that Plaintiff's mental impairments caused limitations, the record also showed that Plaintiff's impairments did not result in functional limitations that would preclude the range of low stress, reduced contact, simple work activity provided for in the ALJ's RFC finding, and Plaintiff has failed to meet her burden of proving that she was more limited than the ALJ found. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such

5

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the entire record and the ALJ's decision, the Court finds that Plaintiff's argument has merit. The ALJ found that Plaintiff retained the ability to perform low stress, reduced contact, simple work activity, with the limitation (among others) that she would be "off task for up to three percent of the day due to symptom exacerbation." Tr. 20. However, the ALJ did not explain how she arrived at the 3% off-task time limitation. In fact, the ALJ does not even discuss off-task time at all in the rest of the decision. Thus, the Court is unclear how the ALJ reached this specific finding in the RFC. *See Starr v. Saul*, No. 18-CV-241, 2019 WL 3997318, at *3 (W.D.N.Y. Aug. 23, 2019) (remand where the ALJ failed to explain or connect "any treatment records to the RFC"). Accordingly, remand is warranted solely on this narrow point.

Specific RFC assessments must be based on evidence in the record, not on an "ALJ's own surmise." *Cosnyka v. Colvin*, 576 Fed. App'x 43, 46 (2d Cir. 2014) (summary order) (remanding where ALJ "translated" medical evidence suggesting that the claimant would be off task "for ten percent of the workday" into a determination that the claimant would be off task "six minutes out of every hour" because "[t]here [was] no evidence in the record to the effect that [the claimant] would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday"); *see also Wouters v. Comm'r of Soc. Sec.*, No. 29-cv-610-FPG, 2020 WL 2213896, at *2 (W.D.N.Y. May 7, 2020); *Elder v. Comm'r of Soc. Sec.*, No. 18-CV-1196, 2019 WL 6320355, at *6 (W.D.N.Y. Nov. 26, 2019).

If an ALJ believes that an off-task time limitation is necessary, he or she must refer to a medical opinion or other specific evidence in the record that supports such a limitation. *See*

*Wouters*, 2020 WL 2213896, at *1 (W.D.N.Y. May 7, 2020) (finding that the ALJ's conclusion that the claimant would be off task 5% of the time was not supported by substantial evidence because the ALJ pointed to no evidence indicating why plaintiff would be off task for this specific percentage of time); *Austin v. Comm'r of Soc. Sec.*, No. 19-CV-638 (JLS), 2020 WL 5629030, at *1 (W.D.N.Y. Sept. 21, 2020) (the RFC determination that plaintiff would be "off task up to three percent of the workday due to symptom exacerbations" was not supported by substantial evidence where "nowhere [in the record] is there an opinion or testimony providing that [plaintiff] would be off-task up to three percent of the workday due to her symptoms . . . [and] this number came solely from the ALJ."); *Elder*, 2019 WL 6320355, at *1 (remand required where nothing in the record supported the ALJ's specific mental RFC determination that [claimant] would be off task for no more than "five minutes . . . per hour" and noting that "if the ALJ wishes to address the time that [plaintiff] can stay on task, she should recontact [plaintiff's] physicians to get their opinions on that issue.").

Here, none of the opinions in the record assessed an off-task time limitation, including the September 2018 opinion from treating psychiatrist Dr. Morra (Tr. 789-90), which the ALJ found "partially persuasive." Tr. 23. As the ALJ noted, Dr. Morra opined that Plaintiff was "very limited" in her ability to maintain attention/concentration as well as in her ability to function in a work setting at a consistent pace; and moderately limited in her ability to make simple decisions as well as interact appropriately with others and maintain socially appropriate behavior without exhibiting behavior extremes. Tr. 23, 790. Dr. Morra more specifically opined that Plaintiff may struggle in any setting that is fast-paced, high stress, or requires significant mental focus, such as driving. *Id*. However, Dr. Morra's opinion did not assess an off-task time limitation. See 789-90.

Nor did the ALJ explain how she derived the specific percentage of 3%, or why she assessed 3% as opposed to one higher or lower. *See Annis v. Comm'r of Soc. Sec.*, No. 18-CV-1276, 2019 WL 6875231, at *10–11 (W.D.N.Y. Dec. 17, 2019) (remanding where no medical opinion supported an ALJ's 5% off-task determination. Without more, this Court cannot understand the basis for this limitation or even be sure what condition(s) it was intended to address. *See Jordan v. Berryhill*, No. 1:17-CV-00509(JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018) ("Without some explanation from [the ALJ] as to the tether between her RFC and the non-stale medical opinions or statements from plaintiff, the RFC appears to be based upon her lay analysis of plaintiff's limitations, which is not permitted and requires remand.").

While the Commissioner faults Plaintiff for her failure to "cite to a single piece of record evidence other than Dr. Morra's opinion" to support her argument that the ALJ's finding of a 3% off-task time limitation was not supported by substantial evidence, neither does the Commissioner cite a single piece of evidence to show that the 3% off-task time limitation *was* supported by substantial evidence. Moreover, it is plausible, as Plaintiff argues, that Dr. Morra's opinion regarding Plaintiff's limitations in attention and concentration and working at a consistent pace warranted a higher percentage of off-task time. *See* ECF No. 7-1 at 11.

Notably, the vocational expert testified that anything over 10% off-task time would preclude employment.t. Tr. 60. *See Greek v. Colvin*, 802 F.3d 370, 374 (2d Cir. 2015) (finding harmful error where ALJ fails to "provide adequate reasons for rejecting [an] opinion" where VE testified that a limitation opined would eliminate all work); *Stasiak v. Berryhill*, 2018 WL 5993732, *2 n.6 (W.D.N.Y. Nov. 15, 2018) (noting that error is harmful where VE testifies a condition will eliminate all work) (internal citations omitted). Thus, any error in the ALJ's off-task time finding was potentially harmful to Plaintiff. *See McBride-Meyers v. Berryhill*, 2017 WL

4386374, *10 (S.D.N.Y. Sept. 29, 2017) (citing Greek v. Colvin, 802 F.3d at 374); see also *Jimmie E. v. Comm'r of Soc. Sec.*, 2021 WL 2493337, *5 (W.D.N.Y. June 18, 2021) (remanding where ALJ failed to include moderate limitation in regulating emotions, controlling behavior, and maintaining well-being, and noting that the error was harmful because the VE testified that an employer would tolerate only up to 10% off-task time).

For all these reasons, this case is remanded so that the ALJ can reconsider this specific limitation in her RFC determination or develop the record to obtain evidence supporting this specific limitation. *See Martin v. Berryhill*, 16-cv-6184-FPG, 2017 WL 1313837, at *4 ("There were many avenues available to the ALJ to fill the gap in the record: he could have requested additional information from [a treating physician], obtained a consultative examination, or sought a medical expert opinion.") (citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)). On remand, the Commissioner "should employ whichever of these methods are appropriate to fully develop the record as to [Plaintiff's] RFC." *Martin*, 2017 WL 1313837, at *4.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

*/s/ Don D. Bush*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE